## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, for the Use and | ) |
| Benefit of, FRANK M. SHEESLEY CO. | ) |
| Plaintiff, | ) |
| v. | )     CIVIL ACTION NO. 3:06-74 |
| | ) |
| ST. PAUL FIRE AND MARINE | ) |
| INSURANCE COMPANY and THE | )     JUDGE KIM R. GIBSON |
| CONTINENTAL INSURANCE | ) |
| COMPANY | ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

This case traces its ultimate origins to the inauspicious beginnings of George Washington's

military command. Washington, then a twenty-two year old Lieutenant Colonel, led almost four

hundred Colonials and British regulars in the Battle of the Great Meadows on July 3, 1754. Sent at the

behest of General Dinwiddie to clear a road through the forests around present-day Pittsburgh, thereby

facilitating the movement of men and materiel to the Ohio River, the force came into contact with six

hundred French troops commanded by Capt. Louis Coulon de Villiers. After inclement weather

swamped his hastily prepared fortifications and rendered most of his powder useless, Washington

negotiated a truce that allowed the peaceful withdrawal of his men. The French occupied and eventually

razed the Colonials' encampment, which had been christened with the somewhat baleful, if perhaps

appropriate, name of Fort Necessity. The first significant engagement of the French and Indian War

was thus also Washington's first and only surrender.[1]

---

[1] For more on the colonial military history of Western Pennsylvania, see CHARLES MORSE STOTZ, OUTPOSTS OF THE WAR FOR EMPIRE: THE FRENCH AND ENGLISH IN WESTERN PENNSYLVANIA: THEIR ARMIES, THEIR FORTS, THEIR PEOPLE 1749-1764 (2005). For more on the life of George Washington, please reference the work of Douglas S.

1

Today, the Fort Necessity National Battlefield is located outside Farmington, Pennsylvania. In 2003, the National Park Service entered into a contract with MCDS, Inc. ("MCDS," "Movant," or "Applicant") for the construction of the Fort Necessity/National Road Interpretive and Education Center ("the Project"). Because the value of the contract exceeded $100,000, the Miller Act, 40 U.S.C. § 3131, *et seq.*,[2] obligated MCDS to obtain a bond protecting all subcontractors providing work or material to the Project. St. Paul Fire and Marine Insurance Company and the Continental Insurance Company (collectively, "Sureties" or "Defendants") thus issued a payment bond ("the Bond") that named MCDS as principal. MCDS agreed to indemnify the sureties for whatever liability they incurred under the Bond.

As the general contractor on the Project, MCDS subsequently executed a subcontract ("the Subcontract") with the Frank M. Sheesley Co. ("FMS" or "Plaintiff"), under which the latter agreed to perform various duties at the work site, including demolition, clearing and grubbing, paving excavation, and concrete construction. Under ¶ 17 of the Subcontract, "[a]ll disputes between the Contractor and Subcontractor . . . shall, at the contractor's sole option, be resolved by arbitration in accordance with the rules of the American Arbitration Association." Document 17, Exh. 1, p. 6.

According to MCDS, FMS "did not complete its work on the Project. In fact, in order to complete the Project, MCDS requested that [FMS] return to the site to finish its incomplete work." Brief in Support of Motion to Intervene (Document No. 17), p. 2 n.1. By not cooperating, Plaintiff allegedly forced MCDS to hire another firm for the work FMS contracted to perform. *Id.* For its part,

---

Freeman.

[2] The Miller Act provides: "Before any contract of more than $ 100,000 is awarded for the construction . . . of any public building . . . a person must furnish to the Government . . . . [a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract. . . ." 40 U.S.C. § 3131(b)(2).

2

FMS contends that "MCDS directed [it] to perform a substantial amount of additional work outside the scope of the Subcontract" and that it "successfully completed all of its work and additional work on the project." Brief in Opposition to the Motion to Intervene (Document No. 22), p. 2. Though FMS submitted invoices to MCDS in the amount of \$2,356,969.17, it claims to have only received \$2,049,953.90, a discrepancy of \$307,015.27. On March 29, 2006, FMS filed suit against the Sureties, seeking the outstanding debt as well as various ancillary expenses. Complaint (Document No. 1), ¶ 23; Document No. 22, p. 2. FMS did not name MCDS in its suit.

On August 23, 2006, MCDS therefore filed two motions with this Court. In the first, it seeks to intervene in FMS' suit under FED. R. CIV. P. 24. Document No. 16. It asserts a right to do so under Rule 24(a), and, in the event the Court finds otherwise, asks for permissive intervention under Rule 24(b). Assuming the Court will allow intervention, MCDS requests in its second motion the enforcement of the Subcontract's arbitration clause. Movant therefore asks for a stay in this litigation and for an order compelling FMS to arbitrate its grievances. Document No. 20. For the reasons set forth in this Memorandum Opinion, both motions are granted.

## II. THE MOTIONS TO INTERVENE

### A. Standards

An applicant for intervention must first comply with the procedural requirements set forth in FED. R. CIV. P. 24(c), which provides: "A person desiring to intervene shall serve a motion to intervene . . . . [that] state[s] the grounds therefor and [is] accompanied by a pleading setting forth the claim or defense for which intervention is sought." Despite the compulsory language of the rule, some federal circuits have held that whether "to permit a procedurally defective motion to intervene is within the sound discretion of the district court." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 595

3

(7th Cir. 1993). *See also Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 313 (6th Cir. 2005); *Beckman Indus., Inc., v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992); *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996); *Werbungs & Commerz Union Austalt v. Collector's Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991); *Day v. Sebelius*, 227 F.R.D. 668, 672-73 (D. Kan. 2005). According to the Sixth Circuit, "This approach accords with the general principle that 'issues involving what can broadly be labeled "supervision of litigation"' are reviewed for abuse of discretion." *Providence Baptist Church*, 425 F.3d at 313 (quoting *Pierce v. Underwood*, 487 U.S. 552, 559, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)). The Third Circuit has not yet squarely addressed this issue.

Assuming no procedural deficiency fatally undermines an applicant's motion, FED. R. CIV. P. 24(a) provides for intervention as a matter of right in two circumstances: first, when unconditionally permitted by a federal statute; or second, under Rule 24(a)(2), "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest. . . ." In the latter case, however, an existing party's representation of the purported interest can create an exception, and the applicant has no right to intervention where his proprietary interest is already being adequately defended. As MCDS makes no claim that a federal statute supports the motion *sub judice*, any right to intervene must arise under subsection (a)(2).

In the Third Circuit,

a non-party is permitted to intervene under FED. R. CIV. P. 24(a)(2) only if: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

4

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 365-66 (3d Cir. 1995). The timeliness of a motion to intervene "is determined by the totality of the circumstances. Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005) (citations omitted). "[W]here a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds." *United States v. Alcan Aluminum*, 25 F.3d 1174, 1182 (3d Cir. 1994).

The interest at stake must be "significantly protectable," which binding precedent interprets to mean "a legal interest as distinguished from interests of a general and indefinite character." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) (citing cases that construe *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L. Ed. 2d 580 (1971)). Generally, the "nature of the interest required to intervene as of right has eluded precise and authoritative definition." *Harris*, 820 F.2d at 596. By way of illustration, however, "a mere economic interest [is generally] insufficient to support the right to intervene, [but] an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top*, 72 F.3d at 366.

The third prong requires that the Court surmise the practical effects on the lawsuit of the grant or denial of the applicant's motion. *Dev. Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 162 (3d Cir. ). "Incidental effects on legal interests are insufficient; rather, there must be a tangible threat to the applicant's legal interest." *Id.* (citing *Brody v. Spang*, 957 F.2d 1108, 1122-23 (3d Cir. 1992)).

Finally, the "burden . . . is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." *Brody*, 957 F.2d at 1123 (quoting *Hoots v.*

5

*Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). The extent of that burden is not concretely established, but varies according to the circumstances. *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). Though often minimal, the burden can rise when the interests of an existing party are presumed coincident with those of the potential intervenor. "[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 315 (3d Cir 2005) (citing with approval *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *Id.* (citing *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)). *See also Brody*, 957 F.2d at 1123 (holding that the presumption of adequacy is defeated if the movant shows a sufficient divergence between its interests and those of the existing party, collusion between the existing parties, or "that the representative party is not diligently prosecuting the suit").

If unable to satisfy these four independent requirements, a proposed intervenor may instead petition for permissive intervention under Rule 24(b). Such a motion requires only that the Court find a sufficient commonality of law or facts between the applicant's claim and the main action.[3] The ultimate determination is left to the Court's discretion. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987).

---

[3] "Upon timely application anyone may be permitted to intervene in an action . . . . when an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. P. 24(b)(2).

## B. MCDS' Procedural Deficiency

Plaintiff first requests summary dismissal of MCDS' Motion to Intervene on the ground that Movant has not filed "a pleading setting forth the claim or defense for which intervention is sought." Document No. 22, pp. 3-4. While MCDS did attach a copy of its Motion to Stay Proceedings and Compel Arbitration as Exhibit A to its Motion to Intervene, FMS cites the narrow definition of "pleading" found in FED. R. CIV. P. 7(a)[4] and argues that the Motion to Stay and Compel cannot satisfy the procedural requirements found in Rule 24(c).

The explicit language of Rule 24 requires that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." As noted above, several courts have found in this imperative language some discretion by which district courts may accept procedurally defective motions. *See supra*, Section II.A. However, Third Circuit caselaw, though sparse on this point, suggests a more stringent view of an applicant's obligations. For instance, that court has held that a Rule 24(c) defect can deprive the trial court of jurisdiction to adjudicate. *SEC v. Investors Sec. Leasing Corp.*, 610 F.2d 175, 178 (3d Cir. 1979). In that case, the district court erred in allowing the intervention of individual stock owners who had not filed the pleadings identified in Rule 24(c). Without any reference to the discretionary authority of the lower court, the intervention was reversed as a matter of law. *Id.*

In a subsequent case, the Third Circuit held that the unique circumstances of a particular lawsuit

---

[4] FED. R. CIV. P. states as follows:

Pleadings. (a) There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

7

compelled reversal of the lower court's dismissal of a motion to intervene as untimely. In remanding

the case for consideration of other intervention factors, however, the court suggested alternative grounds

for denying the motion: the applicant's "failure to comply with the procedural requirements of Rule

24(c)." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1057 (3d

Cir. 1988). *See also Hirshorn ex rel. Carbon Monoxide Eliminator Corp. v. Mine Safety Appliances

Co.*, 186 F.2d 1023 (3d Cir. 1951) ("[S]ince this petitioner did not comply with the rule governing

intervention he was not entitled to intervene as of right."). Though not expressly holding that trial

courts may not accept defective Rule 24 motions, these cases do suggest that such motions are subject

to summary dismissal as a matter of law for failure to comply with subsection (c).

Accordingly, trial courts in this circuit have generally not considered their discretionary powers

before dismissing motions to intervene for procedural inadequacies. *See, e.g., Gaskin v. Pennsylvania,*

231 F.R.D. 195 n.1 (E.D. Pa. 2005) *affirmed at* 05-4627, 2006 U.S. App. LEXIS 18702 (3d Cir. July

25, 2006); *Township of S. Fayette v. Allegheny County Hous. Auth.*, 183 F.R.D. 451, 453 (W.D. Pa.

1998); *Sch. Dist. v. Pa. Milk Mktg. Bd.*, 160 F.R.D. 66, 67 (E.D. Pa. 1995); *Ryer v. Harrisburg Kohl

Bros., Inc.*, 53 F.R.D. 404, 411 (M.D. Pa. 1971); *Sur. Adm'rs, Inc. v. Samara*, 04-05177, 2006 U.S.

Dist. LEXIS 40889, **9-10 (E.D. Pa. June 20, 2006); *Lexington Ins. Co. v. Caleco, Inc.*, 01-5196, 2003

U.S. Dist. LEXIS 1318, **20-21 (E.D. Pa. January 25, 2003); *Creative Dimensions in Mgmt., Inc. v.

Thomas Group, Inc.*, 96-6318, 1999 U.S. Dist. LEXIS 3194 *5 n.4 (E.D. Pa. March 22, 1999). *But see

In re Pantopaque Prods. Liab. Litig.*, 90-3436, 1996 U.S. Dist. LEXIS 17144, *11 (D.N.J. Apr. 1, 1996)

(denying a motion to intervene for procedural defects but noting its discretion to find otherwise); *Phila.

Recycling & Transfer Station v. City of Philadelphia*, No. 95-4597, 1995 U.S. Dist. LEXIS 12773, *8

(August 29, 1995) ("Courts have held that the proper approach to the rule is to disregard non-prejudicial

defects." (citing *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980))).

However, even among courts adhering to this more strict reading of Rule 24, it is rare that only procedural grounds are proffered for denial. "In those cases in which a stern attitude has been taken toward procedural mistakes it is noteworthy that . . . the court also has discussed reasons of substance why intervention should not be allowed." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1914, p. 414-15 (2d ed. 1986). Indeed, of the cases cited above, in only two—*School District* and *Ryer*—were the dismissals wholly stated on procedural grounds.

The Court also notes that the federal circuits have carved a nearly unanimous exception to the express requirements of Rule 24 in the context of confidentiality orders. In such cases, the proposed intervenors do not seek to become a party to the litigation, "but simply want[] access to materials gathered or prepared by the original parties in the course of their litigation." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). Although such intervenors cannot necessarily show a commonality of law or fact as required by Rule 24(b), the D.C. Circuit has nonetheless "expressed a willingness to adopt flexible interpretations of Rule 24 in special circumstances" and held that permissive intervention is the proper vehicle for their challenges. *Id.* (listing concurring cases from eight other circuits).

Even on this issue, however, the Third Circuit has demonstrated less willingness to dispense with Rule 24's express requirements. Rather than hold that intervenors wishing to attack confidentiality orders need not demonstrate the commonality of Rule 24(b), the court has instead decided as a matter of law that such circumstances legally satisfy the Rule's commonality requirement: "By virtue of the fact that the [intervenors] challenge the validity of [an] Order of Confidentiality . . . they meet the

9

requirement of FED. R. CIV. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994). *Pansy* does gesture toward some flexibility in Rule 24(b), however: "There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Id.* (quoting with approval *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)).

It is this kind of flexibility that has prompted other circuits to review procedural dismissals of motions to intervene for abuse of discretion. The prevailing approach among the courts that have considered the question is reflected in the Seventh Circuit's conclusion that "if no prejudice would result, a district court has the discretion to accept a procedurally defective motion." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993) (citing *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987). *See also Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 313-14 (6th Cir. 2005) (concluding that the district court abused its discretion by denying a procedurally defective motion to intervene where the applicant's claims were identified with sufficient specificity and neither party claimed that intervention would impose any prejudice); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) ("[Parties] make no claim they had inadequate notice of the intervenors' appeal, and we find no reason to bar intervention based solely upon [a] technical defect."); *Beckman Indus., Inc., v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) ("[W]here, as here, the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal."); *Spring Constr. Co. v. Harris*, 614 F.2d 374 (4th Cir. 1980) (allowing a procedurally defective intervention where the intervenor provided sufficient notice of its claims and the parties suffered no prejudice); *Werbungs & Commerz v.*

*Collector's Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (same); *Day v. Sebelius*, 227 F.R.D. 668 (D. Kan. 2005) (same); *Pharm. Research & Mfrs. of Am. v. Comm'r*, 201 F.R.D. 12, 13 n.1 (D. Me. 2001) (same).

This wealth of case law demonstrates that the waiver of procedural defects in intervention attempts is often prompted by the merits of the motion itself,[5] the lack of prejudice to the parties,[6] and the principle that Rule 24 is intended simply to notice the parties as to the applicant's position and arguments.[7] As explained more fully below, MCDS' motion is based on the Subcontract, which binds FMS to arbitrate claims arising from its work on the Project. Whether or not the Court should stay this litigation in favor of those arbitration procedures, the terms of the Subcontract at least establish that MCDS has not moved for intervention on frivolous or dilatory grounds. Additionally, the Court finds that the stay is the only "prejudice" that Movant's motions could impose on Plaintiff. However, no stay will be granted unless it is warranted by the agreement that FMS chose to enter. The operation of terms to which Plaintiff acceded cannot now be considered prejudicial to the claims those terms were meant to govern. Lastly, allowing MCDS' intervention in this case would not facilitate some ambush on the parties currently involved. Though no pleading—as that term is strictly defined in FED. R. CIV. P. 7—accompanies MCDS' motion, Applicant has included its Motion to Compel and Stay, and the purpose of the intervention and the Applicant's conduct that the parties can expect going forward are quite clear.

---

[5] *See Retired Chi. Police Ass'n*, 7 F.3d at 595 (examining the likely effects of granting the motion to intervene for the purpose of affirming the lower court's decision not to use its discretion to allow a procedurally defective intervention).

[6] *See, e.g., Providence Baptist Church*, 425 F.3d at 314 (reversing the denial of a procedurally defective motion to intervene where neither existing party claimed that prejudice would ensue).

[7] *Id.*

11

In respect to this last consideration, it is also noteworthy that MCDS does not seek to intervene for the purpose of advancing its own claims against an existing party, but to compel the arbitration to which it contends FMS is obliged to resort. Thus, to insist that Applicant accompany its Motion to Intervene with a proper pleading would be to command that MCDS needlessly expend resources. It would not help efficiently resolve the dispute *sub judice* to require that MCDS file a third-party complaint so that it may immediately seek a stay of its claims in favor of the arbitration proceedings for which it intervened in the first place. To the extent that judicial economy is a consideration in intervention analysis,[8] it makes little sense for the Court, at the expense of parties who could face extensive litigation over strongly related issues, to bind itself to language few judges have found intractable. To do so would make of Rule 24(c) a classic elevation of form over substance.

The Court thus finds that it has the authority to employ its discretion and consider a motion to intervene that contains no pleading, but instead includes a motion to compel arbitration and stay the proceedings. Accordingly, the procedural mandate of Rule 24(c) does not undercut MCDS' Motion to Intervene, and the Court now proceeds to the merits of that motion.

## C. MCDS' 24(a) Claim

As discussed, MCDS has adequately complied with Rule 24(c). Furthermore, the Bond that the Sureties issued represents the kind of specific fund that can ground a legitimate interest for Rule 24(a)(2) purposes. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 366 (3d Cir. 1995). This is certainly the case given MCDS' agreement to indemnify the Sureties, and Plaintiff makes no argument to the contrary. The success of the motion for rightful intervention thus depends on the possible impairment to that interest and the adequacy of the Sureties' representation of that

---

[8] *See infra* Section II.D.

12

interest.[9]

Few of MCDS' arguments about Rule 24(a) intervention squarely address either of these questions. According to applicant, "Sheesley's dispute is with MCDS, not the sureties," "[d]iscovery would certainly involve MCDS," and "permitting intervention will promote judicial efficiency." Document No. 17, pp. 4-5. MCDS also argues that intervention as of right is justified by both the possibility of a future indemnification action against MCDS and the federal policy favoring arbitration, which will be furthered if the Court grants both the Motion to Intervene and the Motion to Compel Arbitration. *Id.* at 5. These arguments seem more tailored to Applicant's Rule 24(b) motion and do little to demonstrate the impairment or inadequate representation that denial of MCDS' 24(a) motion will effect. Deciding Movant's right to intervene, the Court need not address the potential impairment to MCDS' interest, for it finds that the claim to rightful intervention fails to meet the inadequate representation prong of the governing test.

"The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972). However,

> when the party seeking intervention has the same ultimate objective as a party to the

---

[9] There is no dispute regarding the timeliness of MCDS' Motion to Intervene. "Timeliness of an intervention request is determined by the totality of the circumstances. Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005) (citations omitted). Timeliness is also a discretionary determination. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 369 (3d Cir. 1995). This case is still in its initial stages, there have been no filings beyond the initial pleadings and the motions *sub judice*, and discovery is not scheduled to conclude until February 2007, as per the Court's Initial Scheduling Order. Document No. 15, p. 2. That Order also permits the addition of new parties up through October 19, 2006, almost two months after MCDS filed its Motion on August 23, 2006. *Id.* Furthermore, as discussed elsewhere in this Memorandum Opinion, the Motion to Intervene is not frivolous and imposes no prejudice on the existing parties. *See supra*, Section II.B. The Court therefore finds MCDS' Motion to Intervene timely.

13

suit, a presumption arises that its interests are adequately represented. To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit.

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 315 (3d Cir. 2005) (quoting with approval *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214 (4th Cir. 1976)). "The burden is at its most onerous where an existing party is under a legal obligation to represent the would-be intervenor's interest." *In re Richman*, 104 F.3d 654, 660 (4th Cir. 1997) (citation omitted).

By asserting that Plaintiff's suit against the sureties is actually a suit against MCDS, Applicant concedes that its interests are aligned with those of Defendants; the Court finds that it would be disingenuous to conclude otherwise. It is not certain that the Sureties are entitled to indemnification from MCDS in the event that a Subcontractor recovers on the Bond,[10] suggesting that the Sureties have every incentive to avoid liability on the Bond. Even if MCDS does indemnify Defendants, however, "where ultimate liability may lie is not, by itself, determinative of whether Movant should be granted intervention as of right." *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 938 (D. Md. 2004). The question is not who, if anyone, will ultimately pay FMS, but instead whether the Sureties' interests diverge from those of MCDS. The Sureties negatively answer that question in their Eighth and Ninth Affirmative Defenses, which expressly reserve all defenses available or potentially available to MCDS. Defendants' Answer, Document No. 7, pp. 5-6. *See also*

---

[10] Though MCDS contends that there is an indemnity agreement, Document No. 17, p. 2, none has been put on the record. Moreover, even if there is such an agreement, MCDS could still refuse to indemnify the Sureties in certain situations. *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 938 (D. Md. 2004) (noting that the surety will not necessarily obtain indemnification "if the principal can show that the surety did not adequately and in good faith defend" the principal's interests). *See also* RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY § 27(1) cmt. b, illus. 3 (1995) (limiting the circumstances under which a surety is entitled to subrogation from a principal for liability the surety incurred on a payment bond).

14

RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY §§ 19(b), 34 (1996) (allowing the surety to plead all defenses belonging to the principal except discharge of the obligation in insolvency proceedings and the principal's lack of capacity). Additionally, the fact that MCDS and the Sureties are represented by the same firm engenders considerable skepticism that the interests of one will somehow be marginalized in favor of the other. MCDS' attorneys are representing the current defendants and expressly pleading all defenses available to MCDS. The Court therefore finds that Applicant's interests are indistinguishable from those of the Sureties.

In the Third Circuit, "complete identity of interest and legal representation between [a potential intervenor] and [an existing party] insures that the [former's] interests will be adequately represented." *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1975). In *McClune*, the defendants moved to dismiss three claims of the plaintiff-limited partners on the grounds that they belonged to the limited partnership itself. In affirming the dismissal of the partnership's subsequent motion to intervene, the appellate court rejected the argument that *res judicata* might affect the applicant's ability to protect any interest it had in the litigation. The coincident interests of the plaintiffs and the movant assured the latter of adequate representation. *See also Gen. Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372, 376 (D.V.I. 2004) ("Because any interest Proposed Intervenors have or may have is identical to [the defendant's], 'there must be a concrete showing of circumstances in the particular case that make the representation inadequate.'" (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, 7C FEDERAL PRACTICE & PROCEDURE CIVIL 2d § 1909 (1986))); *Shorb v. Airco, Inc.*, No. 82-1983, 1985 U.S. Dist. LEXIS 18631, *9 n.3 (E.D. Pa. June 24, 1985) (citing *McClune* for this proposition).

MCDS has made no contention that the Sureties' interests are different from its own, that the Sureties are somehow in collusion with FMS, or that Defendants are not vigorously litigating

15

Applicant's defenses. In short, Movant has made no effort to satisfy the requirements stipulated in Third Circuit caselaw. The Court therefore finds that the Sureties are adequately defending against any recovery that FMS might achieve against the Bond, and that MCDS cannot intervene as a matter of right.

This conclusion is buttressed by the findings of another district court, which addressed a factually similar case. The Southern District of New York held that when a surety is bound to defend against claims to a bonded amount by subcontractors under the Miller Act, then the general contractor to whom the bond was issued cannot claim that its interests are inadequately represented for Rule 24(a) purposes. *Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 489-90 (S.D.N.Y. 2005). Another case has strongly suggested as much. *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 938-39 (D. Md. 2004) (crediting the arguments that a surety will adequately represent the interests of the principal-general contractor in a suit under the Miller Act, but avoiding the ultimate question due to the allowance of permissive intervention). Joining this line of cases, the Court finds that MCDS' Motion for Rightful Intervention must fail due to Movant's failure to show that the existing Defendants are inadequately representing its interests.

## D. MCDS' 24(b) Claim

As stated above, an applicant may intervene under Rule 24(b) at the Court's discretion if a sufficient commonality of law or facts underlie the applicant's claim and the main action. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b).[11]

---

[11] This section adopts the timeliness and procedural analyses already set forth.

16

The Court first notes that MCDS' arguments for rightful intervention possess considerably greater traction under Rule 24(b), which is expressly more concerned with consolidating common legal or factual issues than with protecting the implicated rights of a non-party. According to MCDS, its disputes with FMS "quite obviously share common questions of law and fact. In fact, the very same questions of law and fact that would be litigated in this action on the bond would be involved in the . . . arbitration" that Applicant hopes to compel. Document No. 17, p. 6. Permissive intervention would therefore "promote judicial efficiency, prevent multiple actions, and permit the Court to . . . promot[e] the strong federal policy in favor of arbitration. . . ." *Id.* In opposition, FMS reiterates that Applicant's interests are identical to those of the Sureties and are being adequately represented by the counsel that the three entities share. Document No. 22, p. 9. Moreover, Plaintiff claims that "the dilatory intent of the sureties and MCDS is clear. The obvious intent of both the sureties and MCDS is to stay this matter pending arbitration. . . ." *Id.*

The Court agrees with Applicant that a plethora of questions to be raised in a potential arbitration proceeding are common with the issues in the main breach-of-contract action. Both the breach-of-contract claim pleaded in FMS' Complaint and any cross-claim MCDS could raise in arbitration share the same factual history. Identical questions will also ground the defenses available in this Court and the claims that Applicant may bring before an arbitrator: The extent to which FMS fulfilled its contractual obligations; whether MCDS could rightfully withhold payment; the amount of any expenses Applicant incurred mitigating Plaintiff's partial performance. While MCDS concedes that its claims against FMS may not fully mature until the Project is completed, it insists that those counterclaims do exist. Document No. 17, p. 2 ("MCDS has certain counterclaims against [FMS]. As of this time, those counterclaims have not yet fully accrued because the Project is still in progress and

17

[certain] items . . . that might affect [FMS'] claim are still pending."). *See also* Letter from MCDS to FMS, Document No. 17, Exh. 2 (notifying Plaintiff that MCDS considered it to be in breach of the Subcontract for enumerated reasons). Furthermore, any judgment that awards FMS damages against the Bond will in all likelihood induce the Sureties to seek subrogation or indemnification from MCDS. *See Mahurins Constr. Co. v. Granite RE, Inc.*, 2004 U.S. Dist. LEXIS 20147, \*3 (D. Kan. 2004); *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, 2001 U.S. Dist. LEXIS 14400, \*\*2-3 (D. Conn. 2001). Rule 24 is meant to prevent the kind of multiplicity of suits that the facts threaten in this case. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." (citing *Reich v. Webb*, 336 F.2d 153, 160 (9th Cir. 1964))). *See also United States ex rel. "Automatic" Sprinkler Corp. v. Fidelity & Deposit Co. of Md.*, 22 F.R.D. 248 (M.D. Pa. 1958) (using permissive intervention to congregate the totality of claims and defenses arising between the various contractors and sureties involved in a particular project).

Rather than have different tribunals examine these issues at different times, notions of judicial economy suggest aggregating them in a single proceeding. *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (expressing the Third Circuit's "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks"). Judicial economy is not a principle that operates exclusively to the courts' advantage. Litigants also benefit when the consolidation of related actions results in the most expedited determination of debts and liabilities. Rather than prosecute or defend coterminous, consecutive, or overlapping actions in a variety of fora, a litigant in FMS' position can achieve a quicker and more definite answer to its outstanding legal questions. Though the addition of parties necessarily causes some delay in a particular case, the time needed to fully resolve that action

18

may still be considerably briefer than what multiple proceedings might require if intervention is denied.

While it is true that MCDS seeks to stay this proceeding altogether, it is not clear that the stay, if granted, would delay the resolution of FMS' claims. Compelling the arbitration procedures that Plaintiff agreed to could have the opposite effect, since the "policy favoring arbitration . . . [can] achieve the twin goals of . . . settling disputes efficiently and avoiding long and expensive litigation." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (3d Cir. 1994) (citation omitted). *See also Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 289 (3d Cir. 2004) ("It is beyond question that arbitration proceedings are a valuable method of dispute resolution, as they offer a means by which parties may obtain a binding result within a short period of time and at relatively minimal expense."); *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 939 (D. Md. 2004) ("As a general matter, one of the primary reasons why federal law favors arbitration is to resolve cases more quickly and efficiently."). Given the principles animating the federal policy favoring arbitration, the Court is not convinced that a stay in this proceeding will unduly delay or prejudice the adjudication of FMS' rights. Rather, intervention will save all parties from having to revisit the central issues of this case in a separate proceeding. As the Court's colleague in the District of Maryland concluded after addressing a factually identical 24(b) motion, "[a]ny potential for undue delay is likely to be mitigated, not exacerbated, by arbitration." *United States ex rel. MPA Constr., Inc.*, 349 F. Supp. 2d at 939.

The Court notes that in a factually similar case, a court in the Southern District of New York denied a motion for permissive intervention. *Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485 (S.D.N.Y. 2005). In that case, however, the plaintiff was a subsubcontractor and the proposed intervenor sought to plead third party claims against the subcontractor. The

19

subcontractor was then expected to allege various third-party counter-claims against the intervenor, including actions under the RICO statute. Intervention thus would have turned a relatively simple contract action into an excessively complicated matter, significantly delaying the plaintiff's case. In contrast, allowing MCDS' intervention does little to alter the essential nature of FMS' lawsuit. Instead, it streamlines the proceedings by discounting the possibility of collateral litigation. Because of the common issues and the lack of any undue delay or prejudice to FMS' claims, the Court therefore grants MCDS' motion for permissive intervention under FED. R. CIV. P. 12(b)(2).

## III. The Motion to Stay and Compel

As a newly-intervened defendant in this case, MCDS' first action is its Motion to Compel Arbitration and Stay Proceedings Pending Arbitration (Document No. 20), in support of which it argues that the arbitration clause in the Subcontract is valid, irrevocable, and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Brief in Support of Motion to Compel Arbitration and Stay Action Pending Arbitrations (Document No. 19), p. 3. MCDS therefore asks the Court to stay these proceedings and compel the arbitral processes to which the parties are bound. Movant does not expressly seeks a stay of FMS' claims against both it and the Sureties, but only requests that the Court stay "the current action." Document No. 19, pp. 4-5. Though the Court surmises from the language of the Motion *sub judice* and from the precedent MCDS cites that Movant requests a stay in the entire case—including FMS' claims against the Sureties—it notes that at least one federal court has allowed a Miller Act suit to proceed against a surety while simultaneously compelling the subcontractor to arbitrate its claims against the bond principal. *United States ex rel. Pensacola Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306, 308 (W.D. La. 1988).

FMS does not contend that the arbitration clause is invalid or that any dispute between it and

20

MCDS is not subject to mandatory arbitration under the FAA. Plaintiff instead argues that its claims

against the Sureties are not governed by any arbitration clause and that the Motion to Stay is merely an

attempt to delay the proceedings and attrite FMS' resources:

> MCDS ignores the fact that the sureties are not signatories to the arbitration
> agreement and are, therefore, neither obligated to participate in, nor bound by the
> results of, any arbitration proceeding. Thus, if MCDS' Motion is granted, FMS will
> have to expend considerable time and resources arbitrating its claim against MCDS,
> only to be faced with the prospect that even if successful, FMS will be unable to
> collect a judgment from MCDS. And certainly, when FMS turns to the surety with
> a copy of the arbitrator's decision in hand, the sureties will disclaim liability arguing
> that as a non-signatory to the arbitration agreements, the sureties are not bound by the
> decision of the arbitrator. *See AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475
> U.S. 643, 648 (1986).

Brief in Opposition to the Motion to Compel and Stay (Document No. 24), p 6. FMS therefore asks

that the Court not stay its claims against the Sureties, even if FMS is compelled to arbitrate any dispute

with Movant. *Id*. at 4-8.

The Subcontract between FMS and MCDS states that "[a]ll disputes between the Contractor and

Subcontractor . . . shall, at the contractor's sole option, be resolved by arbitration in accordance with

the rules of the American Arbitration Association." Exh. 1 to Document No. 20, p. 6, ¶ 17. According

to the FAA, a "written provision . . . to settle by arbitration a controversy thereafter arising out of such

contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Furthermore,

> If any suit or proceeding be brought . . . upon any issue referable to arbitration under
> an agreement in writing for such arbitration, the court . . . shall on application of one
> of the parties stay the trial of the action until such arbitration has been had in
> accordance with the terms of the agreement. . . .

9 U.S.C. § 3. "If one of the parties fails to comply with [an arbitration] agreement, a court may order

'the parties to proceed to arbitration in accordance with the terms of the agreement.'" *In re Mintze*, 434

F.3d 222, 229 (3d Cir. 2006) (quoting 9 U.S.C. § 4). In short, the FAA "requires rigorous enforcement

of arbitration agreements." *Id.* Thus, the Court, finding no invalidity in the Subcontract's arbitration clause—and Plaintiff having asserted no such invalidity—concludes that it must grant MCDS' Motion to Compel Arbitration and Stay Proceedings. To the extent that it is stated against the newly-intervening Defendant, there is no doubt that FMS' claim for breach of contract is subject to the arbitration agreement and cannot initially sound before this Court.

The Court finds, however, that the FAA does not compel FMS to arbitrate its claims against the Sureties, who never adopted the terms of the Subcontract and did not enter a separate arbitration agreement with Plaintiff. But regardless of whether MCDS also seeks a stay of FMS' action against the Sureties, the Court may issue such a stay at its own discretion. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936))). At stake in the decision whether to stay FMS' claims against the Sureties are the principles of economy that motivated the resolution of Applicant's Motion for Permissive Intervention. In this context, those principles implicate a split in federal authority regarding when the surety of a Miller Act bond is bound by an arbitration award.

Plaintiff is concerned that it will be forced to proceed in separate actions to secure its payment under the Bond. First it will have to arbitrate MCDS' liability for the unpaid work FMS performed, then it will have to execute that judgment against the sureties, who will not be bound by any arbitral award against MCDS and who can be expected to assert all defenses already advanced by MCDS. Plaintiff's fear is justified by the Fifth Circuit's holding that a surety is not bound to judgments against

22

its principal "when the [subcontractor's] recovery depends upon a Miller Act bond." *United States Fidelity & Guaranty Co. v. Hendry Corp.*, 391 F.2d 13, 16 (5th Cir. 1968). In *Hendry*, a subcontractor obtained a state court judgment confirming an administrative award against the general contractor. The surety was not a party to either of those proceedings, but was named as a defendant in the subcontractor's subsequent Miller Act suit, in which the District Court found the surety precluded from challenging the subcontractor's award. In a divided decision, however, the Fifth Circuit reversed in order to protect the exclusive jurisdiction that the Miller Act affords federal courts: "Since only federal courts may determine a surety's liability on a Miller Act bond, a state court judgment that would bind a surety on his Miller Act bond offends the congressional mandate." *Id.* at 18. The dissenting judge would have found the surety collaterally estopped from attacking the subcontractor's award. *Hendry*, 391 F.2d at 22 (Godbold, J., dissenting). Bound at least to some extent by *Hendry*,[12] a Louisiana district court held that a surety who had notice and opportunity to appear in an arbitration proceeding was nonetheless not bound by the judgment against the principal that resulted therein. *United States ex rel. Pensacola Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306, 308 (W.D. La. 1988).

The Court finds, however, that *Hendry* has not enjoyed considerable influence over the circuits that subsequently addressed this issue. The Sixth Circuit reviewed *de novo* a subcontractor's attempt to collect an arbitration award from a Miller Act surety and found that, "[w]hile . . . not named, the sureties . . . had notice of the arbitration proceedings against the principal. . . . had an unusually close relationship to [the general contractor]. . . . [and] had interests identical to those of [the general contractor]." *United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.*, 995 F.2d 656, 661 (6th

---

[12] The court found that the "precedential effect of [*Hendry*] has been weakened" by Supreme Court caselaw not relevant here. *Pensacola*, 705 F. Supp. at 312 n.4.

23

Cir. 1993). The notice of the arbitration, the sureties' close relationship with the principal—
demonstrated in part by their shared counsel—and their identical interests led the court to find that the
sureties were bound to the arbitrator's judgment against their principal.

The court relied in part on the Ninth Circuit's holding that "a surety on a Miller Act subcontract
was bound by an arbitration decision later ratified by a state court, even though it 'was not a named
party in the arbitration and made no appearances.'" *Id.* (quoting *United States ex rel. Aurora Painting,
Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1151 (9th Cir. 1987). In *Aurora*, a state court had
confirmed the subcontractor's arbitration award, triggering the federal court's full faith and credit
concerns[13] in the subcontractor's Miller Act case to hold the surety liable for the principal's debt. The
Court rejected *Hendry*'s rationale, however, and held that:

> Because [the surety's] liability is merely derivative, its interests are nearly identical
> [to those of the general contractor]. [The surety] had actual notice of the state court
> action against [the general contractor], tendered its defense to [the general
> contractor], and used the same counsel as [the general contractor]. The surety cannot
> now complain that it was inadequately represented by [the general contractor's]
> defense.

*Aurora*, 832 F.2d at 1153.

Similarly, the Eleventh Circuit bound a surety to a default judgment levied against the principal
in a Miller Act suit in which both the surety and the principal were named as defendants. *Drill South,
Inc. v. Int'l Fid. Ins. Co.*, 234 F.3d 1232 (11th Cir. 2000). Because the surety knew about and had the
opportunity to defend against the possible default judgment against the general contractor, it "should
not be permitted to stand back and allow a judgment to be taken setting the amount of recovery against
its principal without similarly being bound by the judgment." *Id.* at 1236. It made no difference that

---

[13] According to 28 U.S.C. § 1738, "The records and judicial proceedings of any court . . . . shall have the same full faith and credit in every court within the United States."

24

the surety was not obligated to defend the general contractor. *Id. See also Cecil's, Inc. v. Morris Mech. Enter., Inc.*, 735 F.2d 437, 439-40 (11th Cir. 1984) (affirming plaintiff's summary judgment in a non-Miller Act case that found a surety and its principal liable for an arbitration award after they declined the opportunity to appear in the arbitration proceeding).[14]

The Court can find no indication that the Third Circuit has addressed whether a surety is bound by an arbitrator's decision against a principal. However, the caselaw suggests that courts in this circuit trend toward the majority view. The Third Circuit held that an arbitrator's decision was binding against a non-party whose interests were "directly related, if not in fact congruent" to those of a party in the arbitration proceeding. *Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 155 (3d Cir. 1993). *See also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1122 (3d Cir. 1993) (citing *Isidor* for the proposition that "arbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory").

Applying *Isidor* in an unpublished decision, the Middle District of Pennsylvania recently found that a Miller Act surety could move to vacate an arbitration award against its principal, even though the surety was not a party to the arbitration proceeding. *Westra Constr., Inc. v. United State Fid. & Guar. Co.*, No. 03-0833, 2006 U.S. Dist. LEXIS 27887 (M.D. Pa. April 28, 2006). The surety had funded its principal's defense in the arbitration proceeding and had relied on the principal to appeal the arbitral result. When bankruptcy derailed that appeal, however, the court allowed the surety to attack the arbitral award, finding that "it is undisputed that the arbitration award adversely affects a non-party to

---

[14] The *Skip Kirchdorfer*, *Aurora Painting*, and *Drill South* courts all cited the applicable state law regarding surety liability to support their conclusions. None held, however, that this was a state-law issue, and each court premised its result primarily on federal law. In this case, the Court has before it a Pennsylvania plaintiff, a Colorado intervenor, and defendant sureties from Virginia and Maryland. No party has raised the issue of the applicable state law, and the Court expresses no opinion in that regard.

25

that proceeding. Indeed, [the surety] is, because of the award, liable to [the subcontractor] for over $1 million." *Id.* at *5. Only because it would be bound by the arbitrator's judgment was the surety able to circumvent the FAA's restriction on who may appeal arbitral awards.[15]

The record in this case indicates both that FMS has attempted to include the Sureties in any arbitration with MCDS and that the Sureties have declined the offer. *See* Document No. 22, Exh. C. Additionally, the Sureties and MCDS share counsel. *Id.* That the Sureties have been served with Plaintiff's Complaint and Applicant's motions also demonstrates their notice of the dispute. The Court is thus confident that a stay of FMS' claim against the Sureties will not force Plaintiff to relitigate issues decided in the arbitration proceeding. For these reasons, judicial economy impels the discretion of this Court to find that this matter should be stayed in its entirety, pending the outcome of the arbitration proceeding that FMS is hereby compelled to initiate against MCDS.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, the Court hereby grants MCDS' motion to intervene pursuant to FED. R. CIV. P. 24(b)(2). Finding that the Federal Arbitration Act requires the Court to stay FMS' suit against MCDS and compel the arbitration of those claims, the Court also concludes that a stay in FMS' case against the Sureties will give the most effect to the principles behind the Federal Arbitration Act without prejudicing Plaintiff or winnowing the protection that the Miller Act affords subcontractors. An appropriate Order follows.

---

[15] 9 U.S.C. § 11 (allowing a district court to "modify[] or correct[] the award upon the application of any *party* to the arbitration") (emphasis added).

**AND NOW,** this 7th day of November, 2006, **IT IS HEREBY ORDERED** that MCDS, Inc.'s Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24 (Document No. 16) is **GRANTED**. MCDS is therefore allowed to enter this lawsuit as an Intervening Defendant.

**IT IS FURTHER ORDERED** that Intervening-Defendant MCDS, Inc.'s Motion to Compel Arbitration and Stay Action Pending Arbitration (Document No. 20) is **GRANTED**. Accordingly, this lawsuit is **STAYED** in its entirety and Plaintiff must resort to the arbitration proceedings to which it agreed in its subcontract with MCDS, Inc. for resolution of the claims in this lawsuit.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**

27